**MINARIK ELECTRIC COMPANY, d/b/a Minarik Corp., a California Corporation, Plaintiff,**

v.

**ELECTRO SALES CO., INC., a Massachusetts Corporation, Defendant.**

No. CIV.A.2001–12352–RB [1].

United States District Court, D. Massachusetts.

Sept. 26, 2002.

Shepard M. Remis, Goodwin Procter LLP, Boston, James P. Clark, Michael S. Adler, G. Leland Dutcher, Jr., Gibson,

1. With the parties' consent, this case has been referred and reassigned to the undersigned for all purposes including trial and the entry of judgment pursuant to 28 U.S.C. § 636(c). (See Consent to Trial by Magistrate by Minarik Electric Co. # 14 and Consent to Trial by Magistrate by Electro Sales Co. # 15)

Dunn & Crutcher LLP, Los Angelas, CA, for Minarik Electric Co dba Minarik Corporation, Plaintiffs.

Jerry Cohen, Perkins, Smith & Cohen, Margaret A. Lange, Perkins, Smith & Cohen, LLP, Boston, for Electro Sales Company, Inc., a Massachusetts Corporation, Defendant.

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS THE COMPLAINT (# 9)

COLLINGS, United States Magistrate Judge.

### I. Introduction

On December 28, 2001, plaintiff Minarik Electric Company ("Minarik" or the "plaintiff") filed this action alleging that the continued use of the domain name "minarik.com" by the defendant Electro Sales Co., Inc. ("Electro Sales" or the "defendant") constitutes trademark infringement, false designation of origin, cybersquatting, unfair competition, and dilution. (Complaint # 1 at 1, 4) In response, on February 13, 2002, Electro Sales filed a motion to dismiss on the grounds of res judicata (# 9) and a memorandum in support of the motion (# 11). On February 22, 2002, Minarik filed a response in opposition to the motion to dismiss. (# 12) For the reasons discussed below, I will deny the defendant's motion to dismiss.

### II. The Facts

Plaintiff has been selling electric motors and related goods under the MINARIK trademark since approximately 1952, and the trademark has been registered since 1966. (# 1 at 6, 7) The trademark registration is still valid on speed controllers for electric motors and parts thereof. (# 12, exh. A at 22) Prior to 1997 Electro Sales was an authorized distributor of Minarik products. (# 12 at 1) [2] Electro Sales registered the domain name "minarik.com" in October 1995 and had a website posted at that address by February 1996. (# 1 at 2; # 11, exh. 4 at 4) The website was linked to the defendant's own website which also advertised and offered information regarding other companies. (# 12 at 3, 4) Prior to being terminated as an authorized distributor of Minarik products, the defendant afforded the plaintiff company and its products treatment equal to that which it provided for each of its competitors. (Id.)

On November 18, 1996, Minarik filed a complaint against the defendant in the United States District Court for the Central District of California. (# 11, exh. 4 at 1) (hereinafter, the "California Litigation") [3] The complaint in the California Litigation consisted of five causes of action focused on potential trademark infringement as a result of the registration and use of "minarik.com" by the defendant. (# 11, exh. 4 at 1) In disputing the plaintiff's allegations of trademark infringement, the defendant argued that the registration and use of the domain name were actions taken in an effort to satisfy the terms of its distribution agreement which required that it "actively promote [Minarik's] products" and "aggressively pursue potential customers." (Id. at 3) The District Court granted summary judgment in favor of Electro Sales. (# 11, exh. 3)

Since 1997, the defendant has ceased to be an authorized distributor for the plaintiff. (# 12 at 1) Yet, the defendant continues to use the domain name "minarik.com." (Id.) The current use is different than the use prior to the termination of the distribution agreement. (Id.) Although the defendant still links "minarik.com" to

---

**2.** Electro Sales was (and still is) a distributor of products sold by competitors of Minarik. (# 12 at 4).

**3.** Minarik filed an amended complaint in the California Litigation on December 18, 1996. (# 11, exh. 2)

its own website, it has abandoned the practice of providing product and catalogue information on behalf of the plaintiff company. (Id.) The current "minarik.com" site provides little if any information about Minarik or its products; it simply refers the internet consumer back to the Electro Sales website, where there is information on the products of the plaintiff's competitors. (# 12, exh. A at 4, 5) The defendant claims that the full line of Minarik products is still being marketed through the website; however, the plaintiff company points out that it no longer sells any products through the defendant. (# 12 at 13)

On December 28, 2001, Minarik commenced this action against Electro Sales on the theory that the continued use of "minarik.com" by the defendant subsequent to the termination of the distribution agreement constitutes trademark infringement and unfair competition. (See generally # 1) Of the seven claims in the current suit, five were also brought in the California Litigation.[4] (# 11, exh. 2) This situation prompted the defendant to move for dismissal of this entire case on the grounds that in this suit the plaintiff is simply advancing the same causes of action and legal theories that were the subject of the final judgment in the California Litigation. (See generally # 9) Plaintiff opposes the dismissal of this suit, arguing that the present case is based on facts and conduct separate from those addressed in the California Litigation. (# 12 at 1, 2) The two primary differences emphasized by the plaintiff are the fact that the defendant is no longer an authorized distributor of the plaintiff's products and that the defendant has changed the manner in which it utilizes "minarik.com." (Id.)

---

4. The five claims common to the California Litigation and the present suit are Federal Trademark Infringement, False Designation of Origin under the Lanham Act, State Law Claim for Unfair Competition, Trademark Di-

## III. The Standard

The applicable standard when deciding a motion to dismiss under Rule 12(b)(6), Fed.R.Civ.P., is firmly established. It is the responsibility of the Court to "accept the complaint's allegations as true, indulging all reasonable inferences in favor of [the plaintiff]." *Kiely v. Raytheon Co.*, 105 F.3d 734, 735 (1 Cir., 1997); *Hogan v. Eastern Enterprises/Boston Gas*, 165 F.Supp.2d 55, 57 (D.Mass., 2001). For nearly a half century the Supreme Court has taken the position that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim that would entitle [it] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–6, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote omitted). In the face of that judicial paradigm, there remains the exception that "bald assertions, . . . subjective characterizations, optimistic predictions, or problematic suppositions" need not be recognized in a court of law. *United States v. AVX Corp.*, 962 F.2d 108, 115 (1 Cir., 1992) (internal quotations omitted).

## IV. Analysis of Applicable Law

■ The defendant in this case has moved to have this case dismissed on res judicata grounds. Although some debate remains, most federal district courts view res judicata as being synonymous with claim preclusion. Some jurisdictions include issue preclusion along with claim preclusion under a res judicata umbrella. However, the current tendency of the courts is to use the term res judicata to refer solely to the doctrine of claim preclusion.[5] In an effort to follow well-estab-

---

lution, and the Common Law Claim of Unfair Competition.

5. Despite the fact that the Restatement (Second) of Judgments defines res judicata in a very broad sense (to include issue preclusion),

lished precedent, this Court will also take the narrow view of and examine only the issue of claim preclusion in this case.[6]

To determine whether res judicata applies, the Court must analyze "whether a particular legal theory, form of relief, or defense is part of the same claim asserted in the prior action such that it could and should have been raised in the prior action." 18 Moore's Federal Practice 3d § 131.20[1] (2000) (emphasis in original). This Court utilizes a three-pronged approach to make this determination. For a finding of claim preclusion, the Court must find that the following elements are satisfied: (1) a final judgment on the merits in an earlier suit; (2) sufficient identicality between the causes of action in the two suits; and (3) sufficient identicality between the parties in the two suits. *Apparel Art Int'l, Inc. v. Amertex Enterprises, Ltd.,* 48 F.3d 576, 583 (1 Cir., 1995); see also *Gonzalez v. Banco Cent. Corp.,* 27 F.3d 751, 755 (1 Cir., 1994). In the present case there is no need to examine the first and third prongs of the analysis be-

cause there is no doubt that there was a previous final judgment on the merits and that the two current parties were in fact the litigants in the California Litigation.[7] Therefore, in order to determine whether res judicata should apply in the instant case, this Court, through an analysis of the two suits, need only determine whether the second element is established. That is, is there "sufficient identicality" between the causes of action in the instant case and those in the California Litigation?

In *Apparel Art,* the Court reemphasized its commitment to "the methodology of The Restatement (Second) of Judgments in defining what constitutes a cause of action for res judicata purposes." *Apparel Art,* 48 F.3d at 583; see also *Davignon v. Clemmey,* 176 F.Supp.2d 77, 92 (D.Mass., 2001). A "cause of action is defined as a set of facts which can be characterized as a single transaction or a series of related transactions. The cause of action, therefore, is a transaction that is identified by a common nucleus of operative fact." *Apparel Art,* 48 F.3d at 583.

---

the United States Supreme Court has opted to define narrowly and apply res judicata as being synonymous with claim preclusion. 18 Moore's Federal Practice 3d § 131.10[1][b] (2000). In *Migra v. Warren City School Dist. Bd. of Ed.,* the Court explained:

This Court on more than one occasion has used the term "res judicata" in a narrow sense, so as to exclude issue preclusion or collateral estoppel. See, e.g., *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). When using that formulation, "res judicata" becomes virtually synonymous with "claim preclusion." In order to avoid confusion resulting from the two uses of "res judicata," this opinion utilizes the term "claim preclusion" to refer to the preclusive effect of a judgment in foreclosing litigation of matters that should have been raised in an earlier suit.

465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984).

**6.** In its memorandum in opposition to the instant motion, the plaintiff argues that issues will not be precluded from a trial if the judgment from the previous suit was not accompanied by findings. (# 12 at 11) The plaintiff's assertion, based on *Lawlor v. National Screen Service Corp.,* 349 U.S. 322, 327, 75 S.Ct. 865, 99 L.Ed. 1122 (1955), while not unfounded, nevertheless is inapplicable here because it goes directly to issue preclusion which, as stated above, this Court will not analyze as part of res judicata.

**7.** A court's decision granting summary judgment qualifies as a final judgment for res judicata purposes: "It is well established that summary judgment is a final judgment on the merits for purposes of res judicata. See, e.g., *King v. Hoover Group, Inc.,* 958 F.2d 219, 222 (8th Cir.1992)." *Dicken v. Ashcroft,* 972 F.2d 231, 233 n. 5 (8 Cir., 1992). See also *Caballero–Rivera v. Chase Manhattan Bank, N.A.,* 276 F.3d 85, 87 (1 Cir., 2002); 18 Wright & Miller, Federal Practice and Procedure § 4444 at 294–300 (2002).

There are several factors which are useful in determining whether a party has advanced claims in multiple litigations which derive from the same nucleus of operative facts. *Id.* Specifically, section 24 of the Restatement (Second) of Judgments provides that:

(1) When a valid final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar..., the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. (2) What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

In deciding if two claims share a common nucleus of operative fact, the Court should analyze the facts pursuant to the Restatement (Second) of Judgments § 24(2) along with considering the nature of the injury for which the plaintiff is seeking recovery. *Apparel Art,* 48 F.3d at 584. Therefore, if this Court finds that the claims in the California Litigation and the claims in the instant case share a common nucleus of operative facts, claim preclusion will bar the advancement of those claims in the instant suit.

The analysis of the facts involved in this case and the California Litigation is a bit more complicated than in some other cases because here the two litigants had a continued relationship following the judgment in the California Litigation. Under such circumstances, the relevant analysis does not change; however, the plaintiff must include all claims arising prior to the start of litigation in the first case or they will be precluded in any subsequent action. See 18 Wright & Miller, Federal Practice and Procedure § 4409 at 210–14 (2002). Even when two suits concern "essentially the same course of wrongful conduct," the first suit cannot be seen as precluding "claims which did not even then exist and which could not possibly have been sued upon in the previous case." *Lawlor,* 349 U.S. at 327–28, 75 S.Ct. 865. That is, even if the claims in the two suits appear to be similar, if the circumstances have changed since the first lawsuit such that claims in the second suit are based on facts that did not exist at the time of the first suit, then res judicata cannot apply.

A change in the circumstances under which the second claim is brought is of great importance because "[m]aterial operative facts occurring after the decision of an action with respect to the same subject matter may in themselves, or taken in conjunction with the antecedent facts, comprise a transaction which may be made the basis of a second action not precluded by the first." Restatement (Second) of Judgments § 24, comment f. It has long been recognized that res judicata (and collateral estoppel) are applicable only where the second suit is based on the same matters as the first and where the controlling facts and law remain unchanged. *Commissioner v. Sunnen,* 333 U.S. 591, 600, 68 S.Ct. 715, 92 L.Ed. 898 (1948); see also *Spradling v. City of Tulsa,* 198 F.3d 1219, 1223 (10 Cir., 2000) (stating that res judicata is inapplicable in the face of an intervening change in the law or if a modification of significant facts creates new legal conditions). Thus, this Court must determine whether there has been a change in the controlling facts or a change in the applicable law. If so, then claim preclusion would

not apply and the plaintiff would be entitled to proceed with its case.

### V. Discussion

Despite the fact that the plaintiff's current complaint lists five claims that were also brought forth in the California Litigation, res judicata does not necessarily bar the present action. If the claims in the two lawsuits do not arise from a common nucleus of operative fact, as discussed above, then the California Litigation has no preclusive effect on the case at bar.[8] As stated earlier, this Court need only analyze the second prong of the three-prong test from *Apparel Art*—that is, is there sufficient identicality between the two suits? To make this determination, I follow the guidance of the Court in the *Apparel Art* case and must consider the six factors[9] set out in the Restatement (Second) of Judgments § 24(2) as well as the nature of the injury.

The two suits are not in fact related by time, but rather are separated by it. In the previous case the plaintiff sought recovery for the actions of the defendant up to November 18, 1996 when the complaint in the California Litigation was filed. In contrast, in the present case the plaintiff is seeking recovery for the conduct of the defendant occurring subsequent to the termination of the distribution agreement in 1997. Thus, the conduct at issue in the first case occurred in a completely different time frame than the conduct addressed by the current complaint-in the California Litigation the relevant time frame was up to November, 1996 and in the current suit the relevant time frame is from 1997 on.

The issue of space is irrelevant in this case and need not be discussed.

The origin and motivation of the suits will be considered together for the purposes of clarity. The origin of each lawsuit is clearly the use of the domain name "minarik.com," but the manner in which it was used is quite different in each case. In the first case the defendant had used the "minarik.com" website in an effort to market effectively the goods of the plaintiff company with which the defendant had a distribution agreement. The defendant had linked the site to its own site and provided detailed product information and updated catalogues on behalf of Minarik. In sharp contrast, the current suit is meant to address a markedly different use of the website by the defendant. Subsequent to the termination of the distribution agreement, the defendant ceased providing company and product information on behalf of the plaintiff, while continuing to offer the full range of information on the plaintiff's competitors. When an internet consumer seeks to purchase Minarik goods, that individual may arrive at "minarik.com," receive limited information regarding the plaintiff company, advance to the defendant's website, and ultimately be rerouted to one of Minarik's competitors. The plaintiff is no longer selling any products to the defendant; thus, rather than assisting in the sale of the plaintiff's goods, the defendant's website serves the purpose of redirecting potential Minarik customers to the defendant's website where the customers can purchase from Minarik's competitors.

---

**8.** Because all of the causes of action in the instant complaint arise out of the same set of facts, they will be treated as one unit for the purposes of res judicata analysis. That is, if res judicata applies, it would be impossible for this Court to preclude certain of the plaintiff's claims from going forward, while allowing others to advance on the same set of facts.

**9.** Those factors are time, space, origin, motivation, whether a convenient trial unit may be formed from both sets of facts, whether the treatment of the facts as a single unit conforms to the parties' expectations or business understanding and usage, along with the nature of the injuries. See *Apparel Art*, 48 F.3d at 584.

The Court now addresses whether the facts of the two cases are related in such a way that they form a convenient trial unit. This Court finds no feasible manner in which the current causes of action could have been included in the previous trial. First, the defendant's conduct in question in the present case had not yet even occurred at the time of the previous case, so the facts could not have possibly been used. See *Lawlor*, 349 U.S. at 328, 75 S.Ct. 865.[10] Second, there are facts that have changed since the judgment in the prior suit.[11] In situations such as this, where the two parties from a previous suit have continued contact following the judgment in that suit, it would be against the interest of justice to grant one party immunity for future violations. *Id.* at 329, 75 S.Ct. 865.

The next consideration is whether the treatment of the facts as a unit conforms to the parties' expectations or business understanding or usage. Surely, companies engaged in business dealings do not expect that a court decision, which allows a defendant company's actions, renders the defendant forever immune from similar claims regardless of factual changes. A reasonable expectation is that the same claim cannot be brought based on the same set of facts. Here, the current complaint clearly does not assert the same claims based on the same facts. Instead, the instant complaint is advancing some of the same claims under a set of new facts and changed circumstances. As noted above, res judicata is inapplicable in the face of an intervening change in the law or when a modification of significant facts creates new legal conditions. *Spradling*, 198 F.3d at 1223; see also *Sunnen*, 333 U.S. at 599, 68 S.Ct. 715. In *Spradling*, fire department officials brought suit alleging that they were denied overtime compensation pursuant to the Fair Labor Standards Act. *Spradling*, 198 F.3d at 1222. In a previous holding, the district court found in favor of the plaintiffs and the defendants paid the officials what they were awarded in the judgment, but did not compensate them for any overtime following the ruling. *Id.* Plaintiffs argued that the doctrines of res judicata and collateral estoppel would "dictate the same result reached in Spradling I." *Id.* However, the district court agreed with the defendants' assertion that a recent case had changed the applicable law, "rendering the application of either res judicata or collateral estoppel inappropriate." The defendants' summary judgment motion was granted on that basis and the Tenth Circuit affirmed. *Id.* This Court finds that in the instant case there has been a change in significant facts such that res judicata cannot apply.

Two key changes in fact help to differentiate the claims advanced in the California Litigation and those brought forth in the present suit. In the California Litigation, the defendant was an authorized distributor for the plaintiff, whereas in the time between the filing of the California Litigation and the current suit, the plaintiff had terminated its distribution agreement with

---

**10.** *Lawlor* was an antitrust violation case filed by lessors of advertising posters against the manufacturer and distributor of posters and movie producers. There had been a previous settlement and a dismissal "with prejudice" involving a number of the parties involved in the second suit. The defendants sought to have the second suit dismissed on the ground of res judicata. Although both suits were based on the same wrongful conduct, the Court held that the second suit was not precluded because it was based on conduct that occurred subsequent to the previous settlement, named new defendants, and asserted new violations. *Lawlor*, 349 U.S. at 327–28, 75 S.Ct. 865.

**11.** The specific changes in fact alluded to here will be discussed more thoroughly below in the discussion concerning changed circumstances.

the defendant. Because the underlying theory of trademark law is to protect consumers from confusion by allowing companies to register marks to serve as source indicators [12], this change in the legal relationship between the parties is a meaningful one. The shift in the manner in which the defendant used the website is also a significant change of fact because in trademark infringement and unfair competition cases the use by the defendant must be analyzed on a case by case basis to determine the likelihood of consumer confusion. McCarthy on Trademarks and Unfair Competition, § 2:8 (4th ed., 1996).

There has also been a substantial change in the legal climate since the judgment in the previous case. The Anticybersquatting Consumer Protection Act ("ACPA") [13] was passed into law in 1999 in an effort "to provide trademark owners with stronger remedies against cybersquatters, who register domain names of well-known trademarks and then try to profit from the marks." [14] The statute has been found to be constitutionally retroactive, meaning that relief may be sought even if, as in this case, the domain name was registered prior to the enactment of the statute. See *Sporty's Farm L.L.C. v. Sportsman's Market, Inc.*, 202 F.3d 489, 502 (2 Cir., 2000), cert. denied, 530 U.S. 1262, 120 S.Ct. 2719, 147 L.Ed.2d 984 (2000) (holding that the ACPA presents no retroactivity problem because cybersquatting is a continuing wrong); see also *E. & J. Gallo Winery v. Spider Webs Ltd.*, 129 F.Supp.2d 1033, 1047 (S.D.Tex., 2001) (holding that the ACPA is not unconstitutionally retroactive). The defendant argues that because the issues required for the plaintiff to secure a favorable judgment under the ACPA have already been litigated, the current ACPA claim is barred. However, since the Court disagrees with the premise of defendant's argument, res judicata does not bar the ACPA claim.

Finally, even the nature of the injury for which the plaintiff is seeking recovery differs in the two cases. In the first case the plaintiff sought to recover damages due to the deprivation of direct sales caused by the defendant's use of "minarik.com." In the current suit the plaintiff is seeking to recover damages for the loss of business that has resulted from the rerouting of potential customers to its competitors.

In sum, the claims in the California Litigation and the instant lawsuit do not arise from a common nucleus of operative fact. Therefore, the doctrine of res judicata is inapplicable, and the plaintiff is entitled to proceed with the instant lawsuit.

██ Moreover, the defendant's reliance on the first sale doctrine is misplaced. It argues that under the first sale doctrine, "a trademark owner [here, Minarik] ... is not entitled to control the distribution of its trademarked products after the first sale of that product, and the resale of that trademarked product by the first and subsequent purchasers does not constitute either trademark infringement or unfair competition." (# 11 at 9) Thus, the defendant asserts that under the first sale doctrine, it is allowed to stock and resell genuine Minarik products that were purchased on the open market. *Sebastian Int'l Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073, 1076–77 (9 Cir., 1995). The plaintiff, on the other hand, relying on

---

12. McCarthy on Trademarks and Unfair Competition, § 3:1 (4th ed., 1996).

13. The third cause of action in the instant complaint is a claim brought under the ACPA. (# 1 at 6)

14. Elizabeth D. Lauzon, *"Annotation, Validity, Construction, and Application of Anticybersquatting Consumer Protection Act, 15 USCA § 1125(d)."* 177 A.L.R. Fed. 1, introduction (2002).

McCarthy on Trademarks § 25.41, argues that the first sale doctrine "does not allow a distributor to use 'a manufacturer's trademark on the distributor's website in such a way as to confuse consumers into thinking that this is the website of an authorized distributor.'" (# 12 at 7)

In the instant case, however, the first sale doctrine (at least as the defendant has framed it) really does not apply. While it may be true that the defendant has the right to resell Minarik products that it purchased on the open market, the relevant issue here is the use (and potential misuse) of the website. And, the website is clearly not being used in an effort to stock or resell Minarik products. This is apparent given that the website does not provide product or ordering information for Minarik products. It simply reroutes internet consumers to its own website, where products of the plaintiff's competitors may be easily purchased.

Further, the instant case is easily distinguished from the cases used by the defendant to support its argument that the first sale doctrine bars the plaintiff's trademark claims. In each of those cases the plaintiff was seeking to have the defendant enjoined from selling genuine products under the plaintiff's registered mark without the mark owner's consent. See *Sebastian*, 53 F.3d at 1074 (plaintiff suing to prevent defendant from reselling mislabeled products); *Montblanc–Simplo GmbH v. Sta-*

*ples, Inc.*, 172 F.Supp.2d 231 (D.Mass., 2001) (plaintiff corporation suing to prevent the defendant's resale of pens purchased from a distributor and sold after serial numbers were removed); *Societe des Produits Nestle v. Casa Helvetia, Inc.*, 982 F.2d 633 (1 Cir., 1992) (plaintiff seeking to enjoin defendant from importing competing product); *Nexxus Products Co. v. CVS New York, Inc.*, 188 F.R.D. 11 (D.Mass., 1999) (plaintiff suing defendant for resale of plaintiff's products to retailers not authorized to market said products). Here, in contrast, the plaintiff is seeking to have the defendant ordered to discontinue its use of the domain name "minarik.com" and recover damages that have arisen out of the defendant's actions. This is not the situation, like those in the cases cited above, in which the plaintiff is seeking to enjoin Electro Sales from selling Minarik products-here, the plaintiff is seeking to enjoin Electro Sales from using a website to mislead consumers into buying competing products. A ruling in favor of the plaintiff in this case will not affect the defendant's right to stock and resell Minarik products in the future. In sum, the first sale doctrine, at least as it is relied on by the defendant, simply is inapplicable in the instant case.[15]

### VI.   Conclusion

For the reasons stated, it is ORDERED that Defendant Electro Sales Co., Inc.'s Motion to Dismiss the Complaint (# 9) be,

---

**15.** The defendant also relies on *Panavision Int'l v. Toeppen*, 945 F.Supp. 1296 (C.D.Cal., 1996), aff'd, 141 F.3d 1316 (9 Cir., 1998). In *Panavision*, the Court found that the defendant's registering of domain names associated with the plaintiff, only to later profit by selling the names to large corporations, was not an "innocent use" of the plaintiff's trademarks and was in sharp contrast with the principles of "fair competition and free competition." *Panavision*, 945 F.Supp. at 1303–1304. Ultimately, the Court granted summary judgment in favor of the plaintiff. The defendant appears to be arguing that despite the holding in *Panavision*, the plaintiff here should be barred from making any claim based on Electro Sales' misuse of the minarik.com website because Electro Sales' right to use the domain name was previously adjudicated in the California Litigation. However, as the Court has found, the relevant facts and circumstances have changed since the California Litigation and thus the plaintiff should not be barred from bringing claims in this litigation based on Electro Sales' alleged misuse of the website.

and the same hereby is, DENIED as to all claims.