**R.J. TOOMEY COMPANY, Plaintiff,**

v.

**Richard J. TOOMEY, Jr., Defendant.**

**Civ. A. No. 84–0111–XX.**

United States District Court, D. Massachusetts.

March 28, 1988.

George B. Sanders, Jr., Karla de Steuben, Bowditch & Dewey, Worcester, Mass., for plaintiff.

John F. Buckley, Seder & Chandler, Worcester, Mass., for defendant.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

This matter is before the Court on the plaintiff R.J. Toomey Company's (the "Company's") motion for partial summary judgment on its claims alleging that the defendant Richard J. Toomey, Jr. ("Toomey") falsely designated the origin of his product and competed unfairly in violation of the Lanham Act, 15 U.S.C. § 1125(a), and Mass.Gen.Laws ch. 93A, §§ 2 and 11.

### I. Statement of Facts.

The facts, considered in the light most favorable to Toomey, the non-moving party, are as follows. The defendant's father, Richard J. Toomey, Sr., founded the Company in 1936. The Company manufactures and sells cassocks, clerical shirts, collars, vests, albs, clerical fronts and altar boy apparel. Its sales are predominently, although not exclusively, wholesale in nature. Together with two of his brothers, Lawrence J. Toomey and John A. Toomey, Richard Toomey, Sr. incorporated the Company in 1946. In 1973, the brothers Richard and John sold their interest[1] in the Company to Lawrence, who owned and operated the Company until his death in 1976. At that time, Mary A. Toomey, Lawrence's widow, became the sole owner of the Company. At her request, the defendant Richard J. Toomey, Jr. ("Toomey"), son of the founder of the Company, assumed the office of president in 1976, an office that he held until 1981. In January, 1981, Toomey terminated his association with the Company.[2] Subsequent to leaving the Company, Toomey has engaged in the business of selling wearing apparel, such as clerical shirts, slacks, caps, blazer sport coats, dress suits, topcoats, raincoats, and accessory items, as well as funeral director and altar boy apparel. Toomey's business is predominently, although not exclusively, retail in nature.

### II. The Summary Judgment Standard.

■ Fed.R.Civ.P. 56(c) provides that summary judgment shall enter only "[when] there is no genuine issue of material fact and ... the moving party is entitled to a judgment as a matter of law." To defend such a motion, the non-moving party must produce substantial evidence of a genuine dispute of a material fact. *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). A material issue is one which affects the outcome of the litigation. *Astra Pharmaceutical Products, Inc. v. Beckman Instruments, Inc.*, 718 F.2d 1201, 1204 (1st Cir.1983). For such an issue to be considered genuine, there must be " 'sufficient evidence supporting the claimed factual dispute ... to require a jury or judge to resolve the parties' differing versions of the truth at trial.' " *Hahn*, 523 F.2d at 464 (quoting *First Nat'l Bank of Arizona v. Cities Services Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 [1968], *reh. denied*, 393 U.S. 901, 89 S.Ct. 63, 21 L.Ed.2d 188 [1968] ). In deciding a motion for summary judgment, a court must view the record and draw inferences in the light most favorable to the opposing party. *Astra*, 718 F.2d at 1204.

### III. Trademark Infringement and False Designation of Origin.

■ The First Circuit's decision in *Purolator, Inc. v. EFRA Distributors, Inc.*,

---

**1.** No written agreement exists of this transaction. However, the record includes a copy of a statement prepared by Attorney Walter J. Griffin dated March 1, 1974 (the "Statement") which describes the sale of stock of the Company by John A. Toomey and Richard J. Toomey, Sr. back to the Company. The Statement is kept with the minutes of the stockholders meetings and Board of Directors meetings. September 24, 1987 Affidavit of Christine Toomey Ringdahl at ¶ 3.

According to the Statement, the two brothers sold all their stock and thus all their interest in the Company back to the Company. *See* Statement at pp. 2, 4, 5. It would appear that any interest in the name or goodwill of the Company was transferred by the two brothers back to the Company along with their stock, and Toomey does not contest this fact.

**2.** The defendant had then been employed by the Company continuously since 1943. Affidavit of Richard J. Toomey, Jr. at ¶ 3.

687 F.2d 554 (1st Cir.1982) guides this Court with respect to the Company's claim arising under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (the "Act"). This section creates a federal statutory tort broader in scope than the common law tort of unfair competition and the law of infringement. *Id.* at 560–61. The statute "is designed to reach, among other things, attempts to appropriate the goodwill associated with a competitor's trademark by means of confusingly similar marking[s] ..., which would create the impression that the products of the defendant originated with the plaintiff." *Id.* at 561. To be afforded the protection of the statute, the Company need not have registered its mark or trademark. *New West Corp. v. NYM Co. of California*, 595 F.2d 1194, 1198 (9th Cir. 1979); *Quabaug Rubber Co. v. Fabiano Shoe Co.*, 567 F.2d 154, 160 (1st Cir.1977); *National Lampoon, Inc. v. American Broadcasting Co., Inc.*, 376 F.Supp. 733, 747 (S.D.N.Y.), *aff'd*, 497 F.2d 1343 (2d Cir.1974). It need only show that it has "a reasonable interest to be protected against false advertising." *New West*, 595 F.2d at 1198; *Quabaug Rubber*, 567 F.2d at 160. This Court holds that the Company, based on its use of the name Toomey and a trademark[3] bearing the name for over fifty years, has such an interest and therefore has standing under the Act.

To prevail on its § 1125(a) claim, the Company must establish that (1) Toomey used a mark[4] in interstate commerce (2) which is likely to cause confusion or deceive purchasers concerning the source of the goods. *Quabaug Rubber*, 567 F.2d at 160. The record is clear that Toomey has used a mark including the name "Toomey" in interstate commerce.[5] Thus the Court turns its attention to the issue of confusion among purchasers concerning the goods' origin.

In gauging the likelihood of confusion, courts consider a variety of factors: (1) the similarity of the marks; (2) the similarity of the goods; (3) the relationship between the parties' channels of trade; (4) the relationship between the parties' advertising; (5) the classes of prospective purchasers; (6) evidence of actual confusion; (7) the defendant's intent in adopting the mark; and (8) the strength of the plaintiff's mark. *Astra*, 718 F.2d at 1205; *Pignons S.A. de Mecanique v. Polaroid Corp.*, 657 F.2d 482, 487, 492–93 (1st Cir.1981).

(1) *The similarity of the marks.* The marks employed by the plaintiff on its clothing labels uniformly use the designation "R.J. Toomey Co." *See* Affidavit of Mary E. Toomey, Exhibit A; Affidavit of Christine Toomey Ringdahl (hereinafter, "Ringdahl Aff."), Exhibit C. The marks used by Toomey in his print ads, mailing labels, correspondence, and clothing labels vary, and include such designations as "Toomey Clothing Co.," "Toomey Clothing," "Richard Toomey Co.," "Richard Toomey," "Richard Toomey Clergy Apparel," "Toomey–Northboro," "Toomey Northboro, Mass.," "Toomey's," and "Toomey Black Suit Company." In the Company's marks as well as in most of Toomey's marks, the word "Toomey" is clearly the dominant part of these word marks. *See generally* 2 J. McCarthy, *Trademarks and Unfair Competition* § 23:15, at p. 85–86 (2d ed. 1984). Thus, the similarity of the marks is quite strong.

(2) *The similarity of the goods.* The respective lines of apparel of the parties overlap significantly. The Company manufactures clerical shirts and altar boy apparel as well as cassocks, clerical fronts, collars, vests and albs. *See* Affidavit of Mary E. Toomey at ¶ 6; Affidavit of Richard J. Toomey, Jr. at ¶ 7. Toomey also sells cleri-

---

**3.** The term "trademark" is defined by the Act as "any word, name, symbol, or device or any combination thereof adopted and used by a manufacturer or merchant to identify and distinguish his goods, including a unique product, from those manufacturered or sold by others and to indicate the source of the goods, even if that source is unknown." 15 U.S.C. § 1127.

**4.** A mark, as defined by the Act, includes trademarks. 15 U.S.C. § 1127.

**5.** A brief perusal of the invoices produced by Toomey in discovery reveals that he sold his products to customers in several states, including Massachusetts, Connecticut, Maine, Maryland and New Hampshire, as well as in the District of Columbia.

cal shirts and altar boy apparel as well as slacks, caps, blazer sport coats, dress suits, topcoats, raincoats and accessory items, and funeral director apparel.

(3) *The relationship between the parties' channels of trade;* (4) *The relationship between the parties' advertising;* (5) *The classes of prospective purchasers.* Due to their close relation, these three factors will be considered together. *See, e.g., Pignons,* 657 F.2d at 488. Toomey argues that the markets of the parties are so different that no confusion is possible. Specifically, he alleges that 95% of his sales occur on a retail basis, whereas 90% of the Company's sales are to wholesale customers.[6] *See* Affidavit of Richard J. Toomey, Jr. at ¶¶ 6, 8. Such evidence, however, is not dispositive. First, although Toomey's wholesale business is small, it is not insignificant. Nor is the Company's retail business insignificant. Second, the Company's articles of clothing bearing its labels are eventually sold to retail consumers, as are Toomey's goods. Thus, although perhaps the confusion is one step removed, the same retail customers eventually come into contact with the items of both parties. No reason exists why anything should turn on the fact that, for the majority of the Company's product, at least one party stands between it and the ultimate consumer. The danger is still great that the retail customer will be confused as to the origin of the parties' products, with all the poten-

tial detriment that this confusion poses to the Company's business and goodwill.

(6) *Evidence of actual confusion.* While evidence of actual confusion is a factor to be considered by the Court, establishing actual confusion is not a prerequisite to the Company's prevailing on this motion. *See, e.g., New West Corp.,* 595 F.2d at 1201; 2 J. McCarthy, *supra* § 23:2(A), at 50–51. However, the Company has adduced some evidence of actual confusion in this case. For example, the Company received a call from a customer who had purchased shirts from the Company and was calling to complain that he had been billed at a rate different from that in an advertisement put out under the name of Toomey Clothing (one of the names used by Toomey) which he had assumed was a Company advertisement.[7] Ringdahl Aff. at ¶ 15. On another occasion, in April, 1985, another caller insisted that the Company had distributed an advertisement of a suit sale. However, only Toomey, not the Company, sells suits.[8]

(7) *Toomey's intent in adopting his various marks.* As with evidence of actual confusion, the Company need not show intent to prevail. *Purolator,* 687 F.2d at 561. Indeed, there is no evidence in the record that sheds light on Toomey's intent in adopting the marks he employs. However, the First Circuit in *Astra* suggested that in certain circumstances a presumption of bad faith may arise. In granting the defendant's motion for summary judg-

---

**6.** The Company alleges, and Toomey does not dispute, that Toomey began to solicit the Company's dealers and distributors in 1985. *See* Affidavit of Mary E. Toomey at ¶ 15; Ringdahl Aff. at ¶ 11.

**7.** Toomey objects to this statement and the one that follows on the ground of hearsay. However, it is not offered for the truth of the matter asserted—that the caller believed he had been charged the wrong price based on the ad he had seen—but rather to demonstrate that the caller was confused by Toomey's advertisement. In addition, were it hearsay, it would nevertheless be admissible under Fed.R.Evid. 803(3), the state of mind exception. For similar reasons, the statement that follows in the text is admissible.

**8.** The remainder of the evidence that the Company believes shows actual confusion, when viewed in the light most favorable to the defend-

ant, is not conclusive. For example, the Affidavit of Christine Toomey Ringdahl, Vice President and Treasurer of the Company and cousin of the defendant, recounts a telephone call from an individual who asked whether he had reached the Toomey Company in Worcester or the Toomey Company in Northboro. Ringdahl Affidavit at ¶ 15. Although this Court might write differently on a blank slate, the First Circuit, when viewing similar evidence, has held that the fact that the inquirer was aware of the two companies evidences that there was no confusion. *Fisher Stoves, Inc. v. All Nighter Stove Works, Inc.,* 626 F.2d 193, 195 (1st Cir.1980). In addition, the statement that "customers have recently begun to express a growing degree of confusion and frustration," Affidavit of Mary E. Toomey at ¶ 16, is too conclusory to be considered.

ment in *Astra,* the court refused to find that such a presumption had arisen for several reasons. First, both the products—a blood analyzer machine as opposed to, primarily, drugs and accessory items such as syringes—and the markets involved were sufficiently dissimilar to allow both parties to use the mark without confusion. Second, the level of sophistication of the purchasers was quite high. Third, the defendant's initial choice of a mark was arrived at independent of any knowledge of the plaintiff's mark. 718 F.2d at 1203, 1208. The instant case is quite different; here the products and markets, as discussed above, overlap substantially. The purchasers of this type of clothing often lack the product sophistication of hospitals buying highly specialized medical machinery, drugs and accessories. Moreover, Toomey was indisputably aware of the Company's mark,[9] but he nevertheless used it. This Court therefore holds that a presumption of bad faith on the part of Toomey has arisen and has not been rebutted.

■ (8) *The strength of the Company's mark.* As a general rule, "strong" trademarks are accorded broader protection against infringement than are "weak" marks. *Pignons,* 657 F.2d at 492. A finding that the Company's trademark is relatively strong reduces, although it does not relieve the Company of, the burden of substantiating its false designation of origins claim. *Id.*[10]

■ In assessing the strength of a surname trademark, the Court is required to start from the premise that surnames, when used as trademarks, are inherently indistinctive, i.e., weak. Surnames are permitted trademark protection only upon a showing that they have become strong marks by acquiring distinctiveness through secondary meaning. *See, e.g., Abraham Zion Corp. v. Lebow,* 761 F.2d 93, 104 (2d Cir.1985); 1 J. McCarthy, *supra* § 13:2(A), at 578. Secondary meaning is an association made by buyers of the alleged mark with a single source of the product. *See, e.g., Ambrit, Inc. v. Kraft, Inc.,* 812 F.2d 1531, 1536 n. 14 (11th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1983, 95 L.Ed.2d 822 (1987); *Carter–Wallace, Inc. v. Proctor & Gamble Co.,* 434 F.2d 794, 802 (9th Cir.1970); *see also Coca–Cola Co. v. Koke Co. of America,* 254 U.S. 143, 146, 41 S.Ct. 113, 114, 65 L.Ed. 189 (1920) (defining secondary meaning to exist when a trademark "means a single thing coming from a single source, and is well known to the community").

It is undisputed on the record before the Court that the Company's mark has acquired just such a secondary meaning. The Company has produced two affidavits from two men who are long-time members of the clerical apparel industry as well as customers of the Company who attest that the name "Toomey" is widely known in the industry, and universally associated with the R.J. Toomey Company of Worcester, Massachusetts. *See* Affidavit of Adolph A. Alla, Jr. and Affidavit of Robert A. Tonini.[11] As these claims are not challenged by defendant Toomey, this Court holds that the Company's trademark has acquired secondary meaning. It is therefore to be considered a strong mark. *See* 1 J. McCarthy, *supra* § 15:2(C), at 663.

■ Upon weighing these factors, this Court is satisfied that there is great likelihood of confusion. The facts that both

---

**9.** Toomey, having worked for the Company for forty-five years, cannot, and does not, claim that he was unaware of the Company's mark.

**10.** Although *Pignons* discussed the effect of a strong mark in assessing a claim of trademark infringement, 15 U.S.C. § 1114(1), it expressly incorporated the discussion into its analysis of the accompanying false designation of origin claim. 657 F.2d at 492.

**11.** Defendant Toomey objects to at least the latter affidavit, arguing that its content would be inadmissible at trial as it would constitute opinion testimony. This Court will consider it as lay opinion testimony pursuant to Fed.R. Evid. 701. *Cf. Brady v. Chemical Constr. Corp.,* 740 F.2d 195, 200–201 (2d Cir.1984) (permitting the defendant's investigator to testify as to the results of his investigation into the plaintiff's fraudulent activities pursuant to Fed.R.Evid. 701); *Teen–Ed, Inc. v. Kimball Int'l, Inc.,* 620 F.2d 399, 403 (3d Cir.1980) (permitting an accountant hired by the plaintiff to testify as to lost profits damages pursuant to Fed.R.Evid. 701).

parties use the surname Toomey in their marks and sell similar items of merchandise bearing these marks directly or indirectly to similar markets, the evidence of actual confusion, the bad faith exhibited by Toomey in adopting his mark, and the strength of the mark all lead the Court to this conclusion. The Court, therefore, holds that Toomey has falsely designated the origin of his products in violation of 15 U.S.C. 1125(a).

## IV. Massachusetts Gen.Laws ch. 93A, §§ 2, 11.

█ As with § 43(a) of the Lanham Act, the essential element of the action under the Massachusetts Consumer Protection Act, Mass.Gen.Laws ch. 93A, §§ 2, 11, is that defendant's use of a mark caused confusion among customers as to the source of the plaintiff's product. *Mobil Oil Corp. v. Auto–Brite Car Wash, Inc.*, 615 F.Supp. 628, 631–32 (D.Mass.1984). Therefore, in accordance with the foregoing discussion, this Court holds that Toomey has competed unfairly in violation of Mass.Gen.Laws ch. 93A, §§ 2 and 11.

## V. Injunctive Relief.

Injunctive relief may be granted for violation of 15 U.S.C. § 1125(a) upon the above showing that Toomey's actions are likely to cause confusion. *Quabaug Rubber*, 567 F.2d at 160. Moreover, such relief is necessary because Toomey's use of his mark constitutes irreparable harm to the Company not compensable by money damages. *See, e.g., Omega Importing Corp. v. Petri–Kine Camera Co.*, 451 F.2d 1190, 1195 (2d Cir.1971).[12]

█ However, in fashioning injunctive relief in a trademark case where, as here, a surname is the subject of the dispute, this Court is mindful that such injunctive relief is generally limited. *See generally* 1 J.

McCarthy, *supra* chapter 13. Nevertheless, the old notion that an individual has an absolute right to use her surname as a mark when someone else has adopted the name first and established a secondary meaning is dead. *See, e.g., Taylor Wine Co. v. Bully Hill Vineyards, Inc.*, 569 F.2d 731, 735 (2d Cir.1978); *John R. Thompson Co. v. Holloway*, 366 F.2d 108, 113 (5th Cir.1966). Rather, in such cases, courts must fashion a remedy that ensures no further confusion will be generated by the mark of the party junior in right. *See, e.g., Taylor Wine*, 569 F.2d at 735; *MacSweeney Enterprises, Inc. v. Tarantino*, 235 Cal.App.2d 549, 563, 45 Cal.Rptr. 546 (1965).

█ Towards that end, it is ORDERED that:

I. The defendant, Richard J. Toomey, Jr., and all persons and entities acting in concert or participation with him, including his company in Northboro, Massachusetts ("Toomey–Northboro"), are hereby enjoined from:

(a) Using the word "Toomey" or any colorable imitation, or any other mark, word, or name which is confusingly similar to "Toomey," as, or as part of, any trademark or trade name in connection with any labeling, packaging materials, advertising, or promotional materials for any of the apparel products he markets from his business Toomey–Northboro;

(b) Otherwise engaging in any act of unfair competition against the Company or trading upon its goodwill;

(c) Representing, stating, or implying, directly or indirectly, in any manner that:

(1) He or Toomey–Northboro is connected in any way with, or is successor to, the Company;

(2) Any product that is offered for sale by him or Toomey–Northboro is authorized,

---

12. In *Omega,* the court held that where there is a high probability of confusion, "injury irreparable in the sense that it may not be fully compensable in damages almost inevitably follows." 451 F.2d at 1195. This is so, the court believed, because of the difficulty of proving damages. *Id.* The profits of the infringing item to which the plaintiff is entitled are hard to determine. The poor quality of the defendant's product may have resulted in small profits and may have inflicted lasting injury to the plaintiff's reputation in the market. *Id.* Further, while confusion may have caused some purchasers to refrain from buying either product, such loss of sales is "notoriously difficult" to establish. *Id.*

sponsored, endorsed, produced, or otherwise connected with the Company.

II.  The defendant, Richard J. Toomey, Jr., and all persons and entities acting in concert or participation with him, including but not limited to Toomey–Northboro, shall be permitted to employ the trademark "Toomey–Northboro" in his labeling, packaging materials, advertising, or promotional materials if the name is accompanied by the following disclaimer:

Not Connected With

Or a Successor to the

R.J. Toomey Co. of Worcester, Mass.

This disclaimer shall be employed with the identical wording used above and with no additions or deletions. It shall appear on or in every label, piece of packaging material, advertisement, and piece of promotional material which Toomey and those acting in concert or participation with him shall create or employ that also bears the trademark "Toomey–Northboro."

The Court is satisfied that this order will end any confusion as to the origins of the goods sold by the parties while not unduly restricting Toomey's ability to use his surname in connection with his business endeavors.

VI.  Other Relief.

The Company seeks additional relief in the form of an accounting by Toomey to the Company of any and all profits and sums received (i) for goods sold on which Toomey used the name "Toomey" and which were not manufactured by or for the plaintiff, and (ii) for goods with respect to which the defendant has used the name "Toomey" in advertising or solicitation thereof.

It is ORDERED that Toomey provide such an accounting within 90 days of the date of this decision in order to help the Company establish past damages for which money damages may be warranted and to help the Company ensure that the injunction issued today is obeyed.

The Company also requests that Toomey be ordered to deliver up for destruction as the Court shall direct all labels, signs, prints, packages, wrappers, receptacles, advertising, catalogs, and other items which, if used by Toomey or those acting in concert or participation with him, would violate the injunction granted herein.

It is ORDERED that Toomey destroy all such items within 30 days of the date of this decision in order to ensure, whether through mistake or otherwise, that the injunction granted today is not violated.[13]

SO ORDERED.

---

**13.**  Should Toomey appeal this decision, the part of the Court's order ordering destruction of these materials is hereby stayed pending that appeal, to avoid unduly burdening Toomey should this order be vacated.