**GENERAL COUNCIL OF the ASSEMBLIES OF GOD,** Plaintiff

v.

**FRATERNIDAD DE IGLESIA DE ASAMBLEA DE DIOS AUTONOMA HISPANA, INC., et al., Defendants.**

**No. Civil No. 02–2360(SEC).**

United States District Court, D. Puerto Rico.

Aug. 16, 2005.

Enrique J. Mendoza–Mendez, Mendoza & Baco, San Juan, PR, for Plaintiff.

Mireya Baltazar–Suazo, Barceloneta, PR Jorge L. Couto–Gonzalez, Manati, PR, for Defendants.

## OPINION AND ORDER

CASELLAS, Senior District Judge.

■ Pending before the Court is Defendants' motion for summary judgment (Docket # 37).[1] Plaintiff has filed an opposition (Docket # 61) and Defendants have replied (Docket # 71). After examining the parties' filings, the case record and the applicable law, Defendants' motion for summary judgment will be **DENIED.**

### Factual Background

On September 9, 2002 Plaintiff General Council of the Assemblies of God ("GCAG"), a religious organization with its principal place of business in Springfield, Missouri, brought suit against Defendants Fraternidad de Iglesia Asamblea de Dios

---

1. On July 19, 2005 Defendants filed a motion to dismiss Plaintiff's complaint (Docket # 95). Plaintiff filed an opposition and requested that the Court strike said motion to dismiss as untimely since it was filed long past the pleadings deadline in this case (Docket # 97). The Court notes that the complaint in this case was filed almost three (3) years ago, that the Court already ruled on a previous motion to dismiss filed by Defendants, that discovery in this case concluded on July 13, 2005, and that Defendants have already filed a motion for summary judgment which is the subject of this Opinion and Order. Suffice it to say that the pleadings stage has passed and that this case is almost ready for adjudication on the merits. As such, at this juncture the Court will not entertain Defendants' untimely motion to dismiss and will proceed to strike it from the record. Accordingly, Defendants' motion to dismiss in Docket # 95 is hereby **STRICKEN** from the record.

Autónoma Hispana, Inc. ("FIADAH") and Reverend Juan A. Echevarría, seeking injunctive and monetary relief for unfair competition and deceptive practices under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (herein the "Lanham Act"), common law trademark, unfair competition, deceptive practices, and damages under federal and Puerto Rico law. Plaintiff alleges that Co-defendant FIADAH, although properly registered under the previously stated name with the State Department of the Commonwealth of Puerto Rico, in practice calls itself, designates other churches and promotes its business by the name "Asambleas de Dios" (Assemblies of God), all in violation of Plaintiff's trademark rights over said name. In addition, Plaintiff avers that Co-defendant Echevarría is also liable since he is the person who registered FIADAH with the State Department, directs its affairs and has performed acts such as designating and promoting FIADAH and other churches as "Asambleas de Dios" (Assemblies of God).

Defendants have now filed a motion for summary judgment seeking dismissal of all of Plaintiff's claims (Docket # 37). Defendants raise a plethora of arguments in support of said dismissal, to wit: (1) failure to join indispensable parties; (2) lack of standing to sue in Puerto Rico; (3) failure to state a claim upon which relief may be granted; (4) failure to plead under Rule 9(b) and (f) of the Federal Rules of Civil Procedure; (5) the Court lacks subject matter jurisdiction; (6) Plaintiff is not entitled to a monetary award of damages; and (7) lack of individual liability against Co-defendant Echevarría. Plaintiff has filed a timely opposition to said motion which addresses each one of the alleged grounds for dismissal and Defendants replied.

## Standard of Review

Fed.R.Civ.P. 56(b) provides that: "A party against whom a claim ... is asserted ... may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part [of the claims asserted against him/her]." The Court may grant the movant's motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202(1986); *NASCO, Inc. v. Pub. Storage, Inc.*, 29 F.3d 28 (1st Cir.1994). "The principal judicial inquiry required by Rule 56 is whether a genuine issue of material fact exists." 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 3d* § 2725, p. 401.

In this regard, the First Circuit Court of Appeals has noted that for a dispute to be "genuine," there must be sufficient evidence to permit a reasonable trier of fact to resolve the issue in favor of the nonmoving party. *U.S. v. One Parcel of Real Prop.*, 960 F.2d 200, 204 (1st Cir.1992); *see also Boston Athletic Assn. v. Sullivan*, 867 F.2d 22, 24 (1st Cir.1989); *Medina–Munoz v. R.J. Reynolds Tobacco*, 896 F.2d 5, 8 (1st Cir.1990) ("[a] 'genuine' issue is one that must be decided at trial because the evidence, viewed in the light most favorable to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party.") (citations omitted).

By like token, "material" means that the fact is one that might affect the outcome of the suit under the governing law. *Morris v. Gov't Dev. Bank of P.R.*, 27 F.3d 746, 748 (1st Cir.1994). "A fact is material if it

tends to resolve any of the issues that have been properly raised by the parties." 10A Wright, Miller & Kane, *supra,* § 2725 at p. 419. "Not every genuine factual conflict necessitates a trial. It is only when a disputed fact has the potential to change the outcome of the suit under the governing law if found favorably to the nonmovant that the materiality hurdle is cleared." *Martinez v. Colon,* 54 F.3d 980, 983–84 (1st Cir.1995).

In addition, when determining whether to grant summary judgment, the Court may not weigh the evidence. *Casas Office Machs., Inc. v. Mita Copystar Am., Inc.,* 42 F.3d 668 (1st Cir.1994). Summary judgment "admits of no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails." *Id.* (*citing Greenburg v. P.R. Mar. Shipping Auth.,* 835 F.2d 932, 936 (1st Cir.1987)). Accordingly, if the facts permit more than one reasonable inference, the court on summary judgment may not adopt the inference least favorable to the non-moving party. *Casas Office Machs.,* 42 F.3d at 684.

While the moving party has the burden of initially establishing that there is "an absence of evidence to support the non-moving party's case," *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 581 (1st Cir.1984); the nonmovant has a "corresponding obligation to offer the court more than steamy rhetoric and bare conclusions." *Lawton v. State Mut. Life Assurance Co. of Am.,* 101 F.3d 218, 223 (1st Cir.1996). Furthermore, "the nonmovant must 'produce specific facts, in suitable evidentiary form' sufficient to limn a trialworthy issue.... Failure to do so allows the summary judgment engine to operate at full throttle." *Id.; see also Kelly v. United States,* 924 F.2d 355, 358 (1st Cir. 1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence."); *Medina-Munoz,* 896 F.2d at 8, (*quoting Mack v. Great Atl. & Pac. Tea Co.,* 871 F.2d 179, 181 (1st Cir.1989)) (holding that "[t]he evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve.")

Local Rule 56(b), moreover, requires the moving party to file annexed to the motion "a separate, short, and concise statement of material facts, set forth in numbered paragraphs, as to which the moving party contends there is no genuine issue of material fact to be tried." Unless the nonmoving party controverts this statement, all the material facts set forth therein "shall be deemed to be admitted." *Id.; Cosme–Rosado v. Serrano–Rodriguez,* 360 F.3d 42 (1st Cir.2004). This is the so-called "anti-ferret rule." *See, e.g., Orbi, S.A. v. Calvesbert & Brown,* 20 F.Supp.2d 289, 291 (D.P.R.1998). While failure to comply with this rule does not automatically warrant the granting of summary judgment, "it launches the nonmovant's case down the road toward an early dismissal." *Tavarez v. Champion Prods., Inc.,* 903 F.Supp. 268, 270 (D.P.R.1995).

In a recent opinion, the First Circuit reaffirmed the validity of the well-known anti-ferret rule previously codified in Local Rule 311.12. *Cosme–Rosado,* 360 F.3d 42, 45 (noting that "parties ignore [it] at their peril") (*quoting Ruiz Rivera v. Riley,* 209 F.3d 24, 28 (1st Cir.2000) (citations omitted)). As such, the Court is not required to "ferret through the record" lurking for facts that may favor the parties when those facts were not proffered as required by Local Rule 56(c). *Morales v. Orssleff's EFTF,* 246 F.3d 32, 33 (1st Cir.2001).

### Applicable Law and Analysis

#### 1. Failure to Join Indispensable Parties

■ To this end, Defendants avers that Plaintiff's claims should be dismissed for failure to join: (1) other religious organizations which once belonged to GCAG as well; (2) other religious organization which also use the name "Assemblies of God"; and (3) the Department of State of the Commonwealth of Puerto Rico. As to the first two groups, Plaintiff avers that possible claims against "other potential infringers is simply irrelevant" to their claims against Defendants (Docket # 61 at p. 10). As to the Department of State, Plaintiff contends that the argument is frivolous since no remedy is sought against the Commonwealth of Puerto Rico (Docket # 61 at p. 10). We agree on both accounts.

■ Rule 19(a) of the Federal Rules of Civil Procedure provides that a person should be joined in a pending action when: (1) complete relief cannot be afforded to those who are already parties, (2) or the person claims to have an interest in the action and his absence would (i) hinder his ability to protect that interest or (ii) leave a person who is already a party "subject to substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest." Fed. R.Civ.P. 19(a). In tune with the above-stated test, we first analyze whether complete relief can be afforded to Plaintiff in the absence of other religious organizations and/or the Department of State. Defendants do not provide any basis for making this determination. Also, given that Plaintiff is suing Defendants for their alleged illegal use of the "Assemblies of God" trademark, there is no reason to believe that complete relief cannot be afforded without first joining other religious groups which could potentially have also infringed Plaintiff's mark or the Department of State as parties. The "complete relief" prescribed in the Rule only relates to those persons already party to the action; it does not concern any subsequent relief that could be later obtained from the absent party. *See Bedel v. Thompson,* 103 F.R.D. 78 (D.Ohio 1984)(*citing Morgan Guaranty Trust Co. of N.Y. v. Martin,* 466 F.2d 593 (7th Cir.1972)); *Pujol,* 877 F.2d at 137 ("if one thing is clear in respect to Rule 19, it is that, unlike a person vicariously liable in tort, a person potentially liable as a joint tortfeasor is not a necessary or indispensable party, but merely a permissive party subject to joinder under Rule 20").

■ Second, as to the other religious groups' and the Department of State's interest and its ramifications, a party is indispensable under Rule 19(a)(2) only if it claims a "legally protected" interest relating to the subject matter of the action. *United States v. San Juan Bay Marina,* 239 F.3d 400, 406 (1st Cir.2001). Defendants do not even allege what legally protected interest is involved. Thus, we see no need to speculate.

Finally, as to the risk of multiple and/or inconsistent obligations, "[t]he key is whether the possibility of being subject to multiple obligations is real; an unsubstantiated or speculative risk will not satisfy Rule 19(a) criteria." 7 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 3d* § 1604 at 64. In the instant case there is no realistic risk of multiple or inconsistent obligations. At most, Plaintiff could seek relief from other religious groups for trademark infringement. Said speculative cause of action, in no way affects Defendants' defense in the present case. Said action would only affect other religious groups' obligations to Plaintiff and would

not subject neither Plaintiff nor Defendants to inconsistent obligations. Accordingly, Defendants' request for summary judgment on the above-stated ground is **DENIED.**

### 2. Standing to Sue

■ Defendants argue that the GCAG lacks standing to sue in the courts of Puerto Rico since its principal place of business is in Springfield, Missouri and not in Puerto Rico, and it is not authorized to do business as a foreign entity in Puerto Rico (Docket # 37 at p. 8). Defendants further argue that the fact that Plaintiff has conducted business in Puerto Rico without being authorized to do so under the Law of Corporations of Puerto Rico bars any civil action against an entity in Puerto Rico (Docket # 37 at pp. 8–9). Defendants' argument is both confusing and unavailing. The Court agrees with Plaintiff in that an authorization to do business is not a prerequisite to bring a cause of action under the Lanham Act in the District Court for the District of Puerto Rico. We explain.

In support of their contention that GCAG lacks standing to sue, Defendants point to the sections in the Law of Corporations of Puerto Rico, 14 P.R. Laws Ann. §§ 3162–3163, which list the consequences of conducting business in Puerto Rico without being authorized to do so. Art. 13.03(a) states that a corporation doing business in Puerto Rico without authorization to do so will not be able to initiate a cause of action **in the courts of the Commonwealth of Puerto Rico** until it applies and receives its certificate of incorporation from the Department of State. 14 P.R. Laws Ann. § 3163(a). However, in no way does this section, or any other in the Law of Corporations of Puerto Rico, limit a corporation's access to a civil cause of action in federal court. Accordingly, Defen-

dants' request for dismissal on the above-stated ground is **DENIED.**

### 3. Failure to State a Claim Under the Lanham Act

To this end, Defendants claim that Plaintiff has failed to present sufficient evidence in support of its contention that Defendants identify themselves as, or use the name of, "Asambleas de Dios" (Docket # 37 at p. 10). Defendants further argue that Plaintiffs have not presented sufficient evidence to prove a *prima facie* case under the Lanham Act since "plaintiff failed to allege and establish that FIADAH uses in connection with its services a false designation or origin tending to falsely describe or represent the same and shall cause such services to enter into commerce." (Docket # 37 at p. 11). As such, Defendants contend that Plaintiff cannot prove that they created confusion by using "Asambleas de Dios" in their name or that they used this name in interstate commerce (Docket # 37 at pp. 11–12). Defendants further aver that Plaintiff's failure to register the name and trademark "Asambleas de Dios" with the Department of State of the Commonwealth of Puerto Rico or with the United States Patent and Trademark Office (U.S.P.T.O.) further substantiates their contention that Plaintiff does not have an actionable cause of action under the Lanham Act (Docket # 37 at p. 13). Instead, Defendants argue that their trademark of "FIADAH," which is clearly distinguishable from Plaintiff's name, further proves that Plaintiff does not have a cognizable claim against them (Docket # 37 at p. 13).

Plaintiff counters that: (1) the only evidence presented by Defendants in support of their argument that they do not promote themselves as "Asambleas de Dios" is not admissible in evidence (Docket # 61 at pp. 2–3); (2) they have presented suffi-

cient evidence which proves that Defendants use, and have caused confusion by using, the "Asambleas de Dios" label (Docket # 61 at pp. 3–8); (3) Defendants not only conduct business in Puerto Rico but also in the United States, Venezuela, Colombia and the Dominican Republic (Docket # 61 at p. 9); and (4) the Lanham Act protects qualifying unregistered marks against infringement (Docket # 61 at pp. 16–17).

■ Section 43(a) of the Lanham Act imposes liability for, *inter alia*, the use of "any word, term, name, symbol, or device" which "is likely to cause confusion" in "commercial advertising or promotion." 15 U.S.C. § 1125(a)(1). Generally speaking, the purpose of this act is two-fold: protect consumers from being misled and protect producers from unfair practices by competitors. *Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418, 428, 123 S.Ct. 1115, 155 L.Ed.2d 1 (2003). It thus, "broadly prohibits uses of trademarks, trade names, and trade dress that are likely to cause confusion about the [actual] source of a product or service." *Id.* (citations omitted); *Int'l Assoc. of Machinists & Aerospace Workers v. Winship Green Nursing Ctr.*, 103 F.3d 196, 200 (1st Cir. 1996).

■ With these twin purposes in mind, we proceed to explain why Defendants' request for summary judgment must be denied. We begin by first stating, as Plaintiff correctly argues, that it is well settled that Section 43(a) protects qualifying unregistered trademarks from infringement and unfair competition. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992); *Zyla v. Wadsworth*, 360 F.3d 243, 251 (1st Cir.2004)(Section 43(a) is not limited to the protection of trademark holders, the existence of a trademark is not a necessary requirement for an action under said statute); *PHC, Inc. v. Pioneer Healthcare, Inc.*, 75 F.3d 75, 79 (1st Cir. 1996)(this section is commonly used to prevent infringement of unregistered trademarks). As such, the principles applicable to registered marks in order to decide whether relief for infringement and/or unfair competition is proper are equally applicable to causes of action under 15 U.S.C. § 1125(a).[2] *Id.* Furthermore, case law has established that religious institutions are entitled to the protection of trademark and unfair competition laws to the same extent as commercial enterprises. *Gen. Conf. Corp. of Seventh–Day Adventists v. Perez*, 97 F.Supp.2d 1154, 1164 (S.D.Fl.2000) (citations omitted).

■ To prevail on a § 1125(a) claim for trademark infringement, Plaintiff must establish that: (1) Defendants use the "Assemblies of God" name, (2) in interstate commerce, and (3) said use of the "Assemblies of God" name is likely to cause confusion.[3] *R.J. Toomey Co. v. J. Toomey*, 683 F.Supp. 873, 876 (D.Mass.1988).

**2.** This same argument defeats Defendants' evidence documenting that Plaintiff has no trademark registration over the name "Assemblies of God." (Docket # 38, Ex. 1)

**3.** A Court's inquiry into whether a term merits protection under the Lanham Act begins by deciding the extent of its "distinctiveness." *Boston Beer Co. L.P. v. Slesar Bros. Brewing Co., Inc.*, 9 F.3d 175, 180 (1st Cir.1993). A mark's entitlement to protection depends on its classification as: (1) generic, (2) descrip-

tive, (3) suggestive, (4) arbitrary, or (5) fanciful. *Abercrombie & Fitch Co., v. Hunting World, Inc.*, 537 F.2d 4, 9 (2nd Cir.1976). Under no circumstances are generic marks protected. *Miller Brewing Co. v. Falstaff Brewing Corp.*, 655 F.2d 5, 7–8. Descriptive marks are entitled to protection only when a plaintiff can establish that its mark has acquired secondary meaning. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768–69, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992). Finally, suggestive, arbitrary and fanciful terms,

As to Defendants' use of the name "Assemblies of God" to promote their church, Defendants argue that their corporation's name is "Fraternidad de Iglesias Asamblea de Dios Autónoma Hispana, Inc." (FIADAH) and that said name is clearly distinguishable from Plaintiff's name, The General Council of The Assemblies of God (Docket # 37 at p. 11). To this end, however, Plaintiff has introduced into evidence excerpts of Rev. Tomás Rodríguez–Pagán's deposition in which Rev. Rodríguez–Pagán, Vice President of FIADAH, candidly affirms that the name "Asamblea de Dios" is "definitely" used by its organization (Docket # 68, Ex. 4). Plaintiff further provided the Court pictures of Defendants' sign portraying the name "Assemblies of God" in conjunction with the name and telephone number of Co-defendant Echevarría (Docket # 62, Exs. 1 & 2). On the same note, Plaintiff has also attached as exhibits newspaper articles which make reference to the name "Assemblies of God" and link said name with the promotion of the FIADAH (Docket # 68, Exs. 7 & 8). Accordingly, making all inferences in favor of Plaintiff, as we should at this juncture, we find that there is sufficient evidence of Defendants' use of the name "Assemblies of God" to create a triable issue of fact.

On the same vein, Plaintiff argues that Defendants' use of the "Assemblies of God" name was done in interstate commerce. Defendants deny said argument. However, again, Plaintiff submits the deposition of Rev. Rodríguez–Pagán to evidence Defendants' admission on this front. Namely, Rev. Rodríguez–Pagán testified that the FIADAH has reached other nations, such as the Dominican Republic, Colombia, Venezuela, Mexico and certain states in the United States, to wit, Georgia and Florida (Docket # 68, Ex. 4). Furthermore, in a letter dated July 1, 2002, Defendants specifically stated: "we have been recognized as an organization by the laws of the Commonwealth of Puerto Rico and now we reach as far as the United States and several countries in Latin America." (Docket # 62, Ex. 5). The evidence is compelling. Naturally, there can be little doubt that Defendants have entered interstate commerce in promoting their church. *See* 15 U.S.C. § 1127 (a mark is used "in commerce" when a "good is sold or transported in commerce" or a "service is rendered in more than one State or in the United States and a foreign country.").

 Having found that there is sufficient evidence of Defendants' use of the name "Assemblies of God" in commerce, we tackle the central issue in finding trademark infringement or unfair competition: likelihood of confusion. This inquiry is dispositive in a Lanham Act case. *Int'l Assoc. of Machinists & Aerospace Workers*, 103 F.3d at 200. "To demonstrate a likelihood of confusion a markholder must show more than the theoretical possibility of confusion." *Id.* Thus, the likelihood of confusion must be substantial. The First

---

without more, are entitled to protection under the Lanham Act. Although it is possible that the denomination of "Assemblies of God" is a generic or descriptive term, the former devoid of any protection under the Lanham Act and the latter requiring proof of secondary meaning in order to be protected, Defendants have failed to brief the issue and, as such, the Court cannot entertain it. *See e.g., TE–TA–MA Truth Foundation v. World Church of Creator*, 297 F.3d 662, 666–67 (7th Cir.2002) (finding that the name "Church of the Creator" is a descriptive term, entitled to protection under the Lanham Act if a secondary meaning has attached); *Flynn v. AK Peters, Ltd.*, 377 F.3d 13, 20–21 (1st Cir.2004) ("Proof of secondary meaning entails vigorous evidentiary requirements," which may be satisfied with direct evidence (e.g. consumer surveys) or circumstantial evidence (e.g. length and exclusivity of the use of the mark) (citations omitted)).

Circuit has consistently applied eight (8) factors to determine whether the use of a mark is likely to create confusion among the public. This same factors apply to Plaintiff's claim of unfair competition. *Beacon Mutual Ins. Co. v. OneBeacon Ins. Group*, 376 F.3d 8, 14–15 (1st Cir.2004). The factors are: (1) the similarity of the marks; (2) the similarity of the goods or services; (3) the relationship between the parties' channels of trade; (4) the juxtaposing of their advertising; (5) the classes of prospective purchasers; (6) the evidence of actual confusion; (7) the defendant's intent in adopting its allegedly infringing mark; and (8) the strength of the plaintiff's mark. *Id.* at 201; *R.J. Toomey*, 683 F.Supp. at 876; *Doral Pharm., Inc., v. Pharm. Generic Developers, Inc.*, 148 F.Supp.2d 127, 137 (D.P.R.2001). However, none of these factors are dispositive. Each must be examined to determine whether confusion is likely. *Boston Athletic Assoc. v. Sullivan*, 867 F.2d 22, 29 (1st Cir.1989). We address each.

(1) *Similarity of the Marks:* While it is true that Defendants have chosen the name of Fraternidad de Iglesias Asamblea de Dios Autónoma Hispana, Inc. (FIADAH) for their corporation (Docket # 38, Ex. 2), as it has been previously discussed, there is sufficient evidence on the record pointing to their use of the shorter name of "Asambleas de Dios" or "Assemblies of God" in promoting their church. Furthermore, Plaintiff has also provided evidence to the effect that though their name is properly "The General Council of the Assemblies of God," they are commonly referred to as the "Assemblies of God." (Docket # 62, Ex. 20). Accordingly, the similarity of the marks is contested and we find that this factor weighs in favor of a finding of likelihood of confusion.

(2) *Similarity of Services:* It is evident that both parties in this case provide the same service: they are both religious organizations of the same faith. Furthermore, as evidenced by a letter dated November 25, 2001, the ministers of the FIADAH branched out of GCAG to form the FIADAH (Docket # 62, Ex. 6). Accordingly, this factor also favors a finding of likelihood of confusion.

(3) *Channels of Trade and Advertising; Classes of Prospective Purchasers:* These three (3) factors are typically considered together. *Boston Athletic Assoc.*, 867 F.2d at 30. However, neither party has presented relevant evidence in this respect. Thus, we find that these factors are neutral.

(4) *Actual Confusion:* There is no evidence of actual confusion in the record. However, "while evidence of actual confusion is a factor to be considered by the Court, establishing actual confusion is not a prerequisite" to prevail on a motion for summary judgment. *R.J. Toomey Co.*, 683 F.Supp. at 877.

(5) *Intent:* In the case at bar, there is no evidence of "bad faith" attributable to Defendants. While the ministers who formed the FIADAH were previous members of the GCAG and, presumably, knew that using the name "Assemblies of God" could amount to trademark infringement, there is "no persuasive evidence of any intent to use the mark to suggest official sponsorship." *Int'l Assoc. of Machinists & Aerospace Workers*, 103 F.3d at 206. Thus, the factor of intent cannot be used to find likelihood of confusion.

(6) *Strength of the Mark:* Some of the factors used to determine a mark's strength are: the length of time a mark has been used and the plaintiff's relative renown in its field; the strength of the mark in plaintiff's field of business; and the plaintiff's actions in promoting its mark. *Boston Athletic Assoc.*, 867 F.2d at 32. In this respect, Plaintiff argues that

their use of the name "Assemblies of God" dates back to the year 1914 and has cited several dictionaries and encyclopedias which recognize its use of said name (Docket # 62 at pp. 3–4). Also, Plaintiff argues that it is a very large organization, composed of over 12,000 churches, some 2.5 million adherents in the United States and over 29 million adherents overseas (Docket # 62 at p. 2). Plaintiff has further introduced as evidence their Church Directory which lists all the churches affiliated to the GCAG and its locations by district (Docket # 62, Ex. 20). There being no evidence to the contrary, we find that there is a triable issue of fact as to the strength of Plaintiff's mark which substantiates a finding of likelihood of confusion.

Having examined the preceding eight (8) factors and drawing all inferences in favor of Plaintiff, we find that Plaintiff's evidence as to the likelihood of confusion outweighs Defendants bald allegations to the contrary. At a minimum, Plaintiff's evidence creates a genuine issue of material fact as to whether its mark warrants protection under the Lanham Act. Accordingly, Defendants' request for summary judgment for failure to state a claim of trademark infringement and unfair competition is **DENIED**.

### 4. Failure to Plead under Rule 9(b) and 9(f)

Next, Defendants unsuccessfully argue that Plaintiff's claims should be dismissed since it has failed to meet the pleading requirements of Rules 9(b) and 9(f) of the Federal Rules of Civil Procedure (Docket # 37 at p. 9). In the case at bar, Defendants have cited no legal authority in support of their contention that Plaintiff needed to plead its cause of action under the Lanham Act with particularity in compliance with Rule 9 of the Federal Rules of Civil Procedure. Thus, Defen-

dants' contention that more than a "short and plain statement" is required to plead a cognizable claim under the Lanham Act is meritless. We are not aware of any case law to that effect. Accordingly, Defendants' request for dismissal on the above-stated ground is **DENIED**.

### 5. Lack of Subject Matter Jurisdiction

Defendants argue that trademark and unfair competition causes of action are not actionable in Puerto Rico, a civil law jurisdiction (Docket # 37 at p. 14). Defendants, however, fail to acknowledge that this is a Federal court with jurisdiction over common law matters. Furthermore, Section 39 of the Lanham Act vested subject-matter jurisdiction in the federal courts over causes of action created by the Lanham Act. The statute specifically provides that:

> (a) The district and territorial courts of the United States shall have original jurisdiction and the courts of appeal of the United States (other than the United States Court of Appeals for the Federal Circuit) shall have appellate jurisdiction, of all actions arising under this chapter, without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the parties.

15 U.S.C. § 1121. We see no need to add more. The statute is abundantly clear and leaves no room for interpretation. *PHC, Inc.,* 75 F.3d at 79 ("a claim under section 43(a) is a federal cause of action, automatically invoking federal question jurisdiction"). Accordingly, Defendants' request for dismissal of Plaintiff's claim for lack of subject-matter jurisdiction is **DENIED**.

### 6. Entitlement to Monetary Award of Damages

Upon a violation of the Lanham Act, a plaintiff may be entitled to recover:

(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) costs. 15 U.S.C. § 1117(a). The statute further provides that a plaintiff may be entitled to injunctive relief and treble damages, if the Court so deems. 15 U.S.C. § 1117(b). Having held that there are issues of fact preventing the entry of summary judgment on Plaintiff's Lanham Act claims, contrary to Defendants' arguments, Plaintiff could be entitled to a monetary award of damages. Accordingly, Defendants' request for summary disposition on the above-stated ground is **DENIED.**

### 7. Lack of Individual Liability against Co-defendant Echevarría

█ Defendants aver that no individual liability may be imposed on Co-defendant Echevarría since "FIADAH is a legal entity separate from its members ... [and as such,] the Reverend in his personal character is not liable." (Docket # 37 at p. 17). This argument lacks merit. First, Section 1125(a)(1) specifically provides that "any person" can be held liable for violations to said section. 15 U.S.C. § 1125(a)(1). Second, Plaintiff has alleged, and presented evidence, as to Co-defendant Echevarría's direct involvement in FIADAH's alleged violations of the Lanham Act. *See* Docket # 62, Exs. 1 & 2. Accordingly, Co-defendant Echevarría's request for dismissal is **DENIED.**

### Conclusion

For the reasons set herein, Defendants' motion for summary judgment is **DENIED.** A Pretrial and Settlement Conference is set for **August 22, 2005 at 2:00 p.m.**

**SO ORDERED.**